PeaesoN, O. J.
 

 There is nothing in the will to justify the construction, that the executor was to retain possession of the property, and rent out the laud, hire out the negroes, from, year to 3ear, for the benefit of the children, so as to answmr the purpose of, or be, a substitute for a testamentary guardian, lie has a mere power to allot to the children as they respectively arrive at age or marry, the portion to which they may be entitled.
 

 The testator gives his wife such portion of the real and personal estate as she would have been entitled to. in case of his.
 
 *283
 
 intestacy ; but it is clear, from the whole scope of the- will, that he did not expect her to have it separated from the rest of his estate, except in the event of her marrying again, and his intention and wish .was, that the whole estate should go into the hands of his wife, to be managed by her for the support and maintenance of herself and the children, and for their education, which is to be under the direction of “their mother,” with whom he expected they would m'ake their home, until they respectively married or arrived at age; in which event, the executor was to see that a proper share was allotted to each.
 

 Subsequently, events, however, made it impossible to carry this wish of the testator into effect. The debts turned out to bo more than he expected, so as to make.it expedient to sell the land. The wife had her share of the proceeds of the sale, in lieu of her dower, and it appears by the answer, she has had her portion of the slaves allotted to her, and as “the whole estate” cannot now be kept together as a home for herself and the children, the residue of the estate, to which they are entitled, must be paid over to the guardian, who may be appointed for them, and be subject to his possession and management. and not that of the executor, because no such power is conferred on him.
 

 The exceptions to the first report, on the ground, that the commissions allowed are excessive, are sustained. Upon the amount of $6858, cash paid to him by the clerk and master, as the proceeds of the sale of land, made by the clerk and master, who, we are to presume, was allowed for selling— taking notes — making title, and collecting, and the amount of $450 cash paid in the same way as proceeds of an interest in slaves, sold by the clerk and master, 4-J- per .cent, is certainly too high. We think one per cent is enough for merely receiving the money.
 

 There seems to have been very few debts due to the estate and of the debts due by the testator, the larger amount were in two .debts, $3000 to bank at Raleigh, $4000 to Graves, guardian, and there seems to have been little or no litigation in settling the claims of or against the testator ; besides, the
 
 *284
 
 bulk of the receipts was for the sale of slaves, and a few items run up a large figure. Upon the whole, we think 3 per cent on the receipts and disbursements a proper allowance, and one per cent on the amount received from the clerk and master. We have the less reluctance in differing with thecommission-«r in respect to the commissions allowed, because he informs us that he did not act so much on his own judgment as upon iihat of the county court, whose estimate he adopted.
 

 The second or supplemental report must be set aside, on the ground, that the judgment recovered against the executor cannot be passed as a voucher, until it is paid, or so arranged as to discharge the estate of the testator from all further liability.
 

 Pee 'Cueiam, Recommitted.