STATE ex rel. ANNIE E. CARR, Adm'x, et al. v. W. F. ASKEW et als.

*Guardian and Ward—Liability of bond—Trustee—Interest—Commissions—Jury Trial—Counter-claim—Set-off—Retainer.*

1. Where a guardian has received money by virtue of his office, and for his ward, he cannot exonerate himself from liability by showing that the money so received was not the property of his ward, but was due to another person.

2. Where a father insured his life for the benefit of his two children, both minors, and one died shortly after the death of the father, and the guardian of the other received the entire sum due under the policy; *It was held,* that his bond was liable for this entire amount.

3. As a general rule, when a trustee has not only neglected to invest the fund, but has applied it to his own purposes, as by using it in his business, he will be charged with the highest rate of interest allowed by law; but when a guardian makes regular returns for a number of years, for a part of which time he charges himself with the highest rate of interest, although he has used the funds in his own business, he will not be charged with the highest rate, but only with such rate as he might fairly be expected to have been able to make.

4. A guardian can only be charged with compound interest to the death of his ward.

5. A guardian will be allowed commissions, although he uses his ward's money in his business, if he makes regular returns, so as to show at all times what amount is due his ward.

6. Where the sum received was $10,000, and there was no trouble or litigation connected with the estate, a commission of two and one-half per cent. on receipts, and five per cent. on disbursements was allowed.

7. Where a reference is by consent, the parties waive the right to have any of the issues of fact passed on by a jury. Where the reference is compulsory, the excepting party has the right to have all *issues of fact which arise on the pleadings,* submitted to a jury, but not the questions of fact which arise on exceptions to the findings of fact by the referee.

8. While one who is sued by an administrator, cannot set up a demand in his favor against the plaintiff in his individual capacity, as a counter-claim or set-off, yet if the administrator is insolvent, and a portion of the recovery will belong to him in his individual capacity, such claim may be set up as a retainer in the nature of a set-off.

(*Humble* v. *Mebane,* 89 N. C., 410; *Sain* v. *Bailey,* 90 N. C., 566; *Burke* v. *Turner, Ibid.,* 588; same case, 85 N. C., 504; *Graves* v. *Graves,* 5 Jones' Eq., 280; *Klutz* v. *McKenzie,* 65 N. C., 102; *Armfield* v. *Brown,* 70 N. C., 32; *Overby* v. *Building Association,* 81 N. C., 56; *Grant* v. *Reese,* 82 N. C., 72; *Green* v. *Castleberry,* 70 N. C., 20; *Currie* v. *McNeill,* 83 N. C., 176; *Holiday* v. *McMillan,* 79 N. C., 315; same case, 83 N. C., 270; *Pegram* v. *Armstrong,* 82 N. C., 326, cited and approved).

This was a CIVIL ACTION, tried before *Clark, Judge,* at the Fall Term, 1885, of WAKE Superior Court, upon exceptions to the report of a referee.

Exceptions were taken to the report by both parties, and both appealed from the rulings of the Court thereon. The action was brought in the name of the State, upon the relation of Annie E. Carr, as administratrix of Minnie Moore, deceased, and Albert G. Carr, husband of said Annie, against William F. Askew, and the other defendants, who were his sureties, upon the several guardian bonds given by the said Askew, as guardian of Minnie Moore, to recover the amount alleged to be due from Askew as guardian aforesaid, to the plaintiff, as administratrix of her intestate, the said Minnie Moore.

The first bond bore date the 8th of March, 1875, and was in the penal sum of twenty thousand dollars, to which the defendants Rufus G. Dunn, James B. Dunn and George W. Swepson were sureties.

The second was in like penal sum, with John A. Cheatham, David Lewis, William A. Smith and George W. Swepson sureties, and dated March 5th, 1878; and the third was in the same penal sum as the preceding ones, dated September 13th, 1882, and was signed by W. K. Davis, David Lewis, and John Gatling as sureties.

Since the execution of these bonds, George W. Swepson died, leaving a last will, in which he appointed Virginia B. Swepson, his sole executrix, who had the will admitted to probate, and has duly qualified as executrix thereof, and she was made a party defendant.

Minnie Moore died intestate and under age, in the year 1883, and prior to this action, the plaintiff Annie E. Carr, was duly appointed administratrix of the estate of the said Minnie.

Albert G. Carr is the husband of the said Annie E. Carr.

The plaintiffs assigned as breaches of said bonds, in that Askew, as guardian, had failed and neglected to secure and improve the estate of his said ward, and has refused to account for, and de-

liver up to the plaintiff, the estates and property of his ward, although a demand was made upon him by her, prior to the commencement of this action, and she demanded that an account be taken of the moneys and property that has come, or ought to have come into the hands of the said Askew as guardian; and for judgment against the defendants for the penalties of said bonds, to be discharged upon the payment of the amount which shall be found due to the relator.

The defendant W. A. Smith first filed a separate answer, admitting all the allegations of the complaint, except the liability of the defendant Askew, as alleged in the complaint, for the reason he had no knowledge or information of the matter, sufficient to form a belief, but subsequently joins with the other defendants in a joint answer, in which all the material allegations set forth in the complaint are admitted.

They further alleged in their answer, 1st. That Minnie Moore, the plaintiff's intestate, was not in debt at the time of her death, and that the expenses of administration on her estate would not amount to more than five hundred dollars.  2d. That Minnie Moore left her surviving, two brothers of the half blood, and her mother, the plaintiff.  3d. That Annie E. Carr has no property, except what she may recover in this action; and 4th. That the said Annie E. Carr was indebted to the defendant W. F. Askew for money loaned in the sum of $2,854.90, and they demanded that the sum should be deducted from whatever amount may be ascertained in this action to be found due from Askew, as guardian of Minnie Moore.

Plaintiffs replying to the answer, deny the allegations therein, except the second, and allege that Minnie Moore left her surviving three brothers of the half blood, instead of two, as alleged, and they allege that if the defendant had any counter-claim, it was barred by the statute of limitations.

At the February Term, 1885, the Court, upon objection of W. A. Smith alone, ordered a compulsory reference to C. M. Busbee, Esq., to take and state the account of said W. F. Askew,

as guardian of Minnie Moore, and to hear and report upon all matters appertaining to said guardianship account, and report to the next term of the Court.

At the August Term, 1885, the referee made his report, accompanied by the evidence taken before him, and a full and detailed statement of accounts, and the following is his findings of fact and conclusions of law:

"1. That on the —— day of July, 1869, James A. Moore, the then husband of the plaintiff Annie E. Carr, died in the county of Wake, leaving two children, Minnie Moore and John C. Moore, both infants.

2. That on the 30th day of August, 1869, the defendant William F. Askew duly qualified as the guardian of said infants, Minnie Moore and John C. Moore, under appointment of the Probate Court of Wake county, and gave his bond as such guardian in the sum of twenty thousand dollars, with W. H. High, and Geo. W. Swepson the testator of the defendant Virginia B. Swepson, as his sureties.

3. That said infant, John C. Moore, died some time in the month of September, 1869, leaving him surviving his mother, the plaintiff Annie E. Carr, then Annie E. Moore, and his sister, the said Minnie Moore, who were his only next-of-kin.

4. That the said James A. Moore, at the time of his death, had a policy of insurance upon his life in the Ætna Life Insurance Company, in the sum of ten thousand dollars, "for the benefit of his wife, Annie E. Moore, so long as she remains in widowhood, and children," and the amount payable under said policy, upon the death of said James A. Moore, was nine thousand seven hundred and eighty-nine dollars and eighty-one cents ($9,789.81).

5. That the sum of sixty-five hundred and twenty-six dollars and fifty-four cents ($6,526.54), was paid by the said insurance company upon said policy, to the defendant William F. Askew, as guardian of the said infants, Minnie Moore and John C. Moore, on the 11th day of December, 1869, and on the same

day, the sum of thirty-two hundred and sixty-three dollars and twenty-seven cents ($3,263.27), was paid by the said insurance company upon said policy, to the plaintiff Annie E. Carr, then Annie E. Moore.

6. That on the 13th day of December, 1869, the plaintiff Annie E. Carr, paid to the defendant William F. Askew, as guardian of Minnie Moore, the sum of thirty-four hundred and seventy-three dollars and forty-six cents ($3,473.46), of which thirty-two hundred and sixty-three dollars and twenty-seven cents ($3,263.27), was the money received by her from said insurance company as aforesaid, and two hundred and ten dollars and nineteen cents ($210.19), was advanced by her out of her own funds, in order that the amount in the hands of the defendant William F. Askew, as guardian, might be ten thousand dollars.

7. That the defendant William F. Askew charged himself in his returns as guardian of Minnie Moore, with the sums of money received by him, as aforesaid, from the said Ætna Life Insurance Company, and the said Annie E. Carr, amounting, in all, to ten thousand dollars ($10,000), interest on one-half thereof to be paid to said plaintiff Annie E. Carr during her widowhood.

8. That on the 13th day of December, 1870, the defendant William F. Askew filed in the Probate Court of Wake county the following return : ·

WILLIAM F. ASKEW, *Guardian of Minnie Moore,*
           Dr.

| | | |
|---|---:|---:|
| To cash ($10,000) received December 13, 1869, on life insurance policy on the life of James A. Moore, deceased | $10,000 | 00 |
| Interest twelve months to date | 600 | 00 |
| | $10,600 | 00 |
| Interest paid to widow and ward, and tax receipt, $77.16 | 677 | 16 |
| | $9,922 | 84 |

One-half interest to be paid to Mrs. Annie E. Moore, widow of said James A. Moore, as long as she remains in widowhood, and the other half to my ward.

(Signed)                 W. F. ASKEW,
                                    *Guardian.*

Sworn and subscribed before me, this the 13th day of December, 1870.

(Signed)                 J. N. BUNTING,
                              . *Probate Judge.*

9. That thereafter the said William F. Askew, as guardian of Minnie Moore, filed in said Probate Court, other returns.

10. That on the 8th day of March, 1875, the said William F. Askew renewed his bond as guardian of Minnie Moore, in the sum of twenty thousand dollars, with the defendants R. G. Dunn, J. B. Dunn and G. W. Swepson, the testator of the defendant V. B. Swepson, as sureties, as alleged in the complaint.

11. That thereafter, on the 5th day of March, 1878, the said William F. Askew renewed his bond as guardian of Minnie Moore, in said sum of twenty thousand dollars, with the defendants John A. Cheatham, David Lewis, William A. Smith and the said Geo. W. Swepson, as sureties, as alleged in the complaint.

12. That thereafter, on the 13th day of September, 1882, the said William F. Askew renewed his bond as guardian of Minnie Moore, in said sum of twenty thousand dollars, with the defendants William K. Davis, David Lewis and John Gatling, as sureties, as alleged in the complaint.

13. That the plaintiff, Annie E. Carr, intermarried with her co-plaintiff, Albert G. Carr, on or about the 13th day of December, 1875.

14. That the said Minnie Moore died in the county of Durham, some time in the year 1883, still under the age of twenty-one; and the plaintiff Annie E. Carr duly qualified as her adminis-

tratrix, under the appointment of the Clerk of the Superior Court of said county, prior to the institution of this action.

15. That the said defendant William F. Askew used and invested in his own business the entire sum of money received by him as aforesaid, amounting to ten thousand dollars, from the time it first went into his hands, and never otherwise invested the same.

16. That all the money which went into the hands of the said defendant William F. Askew, arose from the policy of insurance, except the sum of two hundred and ten dollars and nineteen cents ($210.19) before mentioned.

17. That from the 13th day of December, 1869, to the present time, money could have been loaned in Wake county, upon safe personal security, or real estate mortgage, at *eight per cent.* interest *per annum;* but taking into consideration the intervals occurring between the taking in and relending of loans, a continuous rate of *seven per cent. per annum* would have been the maximum that could have been realized.

18. That the said defendant William F. Askew, in his said guardian returns, charged himself with 6 per cent. interest on the money in his hands, from the 13th day of December, 1869, to the 13th day of December, 1870; with eight per cent. from the 13th December, 1870, to the 13th December, 1875; with seven per cent. from the 13th December, 1875, to the 13th December, 1878; and with six per cent. from the 13th December, 1878, to the 13th December, 1882.

### CONCLUSIONS OF LAW.

1. That the defendants are liable to the plaintiff Annie E. Carr, as administratrix of Minnie Moore, for three-fourths of the amount received by the defendant William F. Askew from the Ætna Life Insurance Company, being four thousand eight hundred and ninety-four dollars and ninety-one cents, and are chargeable with the same in the account herein stated.

2. That the defendants are not liable to the plaintiff Annie E. Carr, as administratrix of Minnie Moore, for one-fourth of the amount received by the defendant William F. Askew from the said Ætna Life Insurance Company, being one thousand six hundred and thirty-one dollars and sixty-two cents, the same being the individual and personal share of the plaintiff Annie E. Moore, of the portion of the fund received by the defendant William F. Askew, as guardian of Jno. C. Moore, deceased, and the same is not recoverable by her as administratrix in this action.

3. That the defendants are liable to the plaintiff Annie E. Carr, as administratrix of Minnie Moore, for the amount paid to the defendant William F. Askew, as guardian of Minnie Moore, by the plaintiff Annie E. Carr, being three thousand four hundred and seventy-three dollars and forty-six cents, the same having been received by him by virtue of his office as guardian of Minnie Moore.

4. That the defendant William F. Askew, in the statement of his account as guardian, is not entitled to any commissions upon his receipts and disbursements.

5. That in the statement of the account of the defendant William F. Askew, as guardian, he is chargeable with interest at the rate of seven per cent. per annum, except as to those years in which he charged himself with eight per cent. (from 1870 to 1875, both inclusive), and for those years he is chargeable with eight per cent.

6. That the plaintiffs are entitled to recover of the defendants, (in accordance with the statement of account hereto attached), the sum of ten thousand and fifty-nine dollars and six cents ($10,-059.06), with interest at seven per cent. per annum on eight thousand four hundred and fifty-one dollars and ninety-two cents ($8,451.92) thereof, until paid, and the costs of this action."

The plaintiff excepted to the report of the referee:

I. For that he finds as a conclusion of fact, in the latter portion of section 17 of said report, the following: "but taking into con-

sideration the intervals occurring between the taking in and re-lending of loans, a continuous rate of seven per cent. per annum would have been the maximum that could have been realized."

The grounds of this exception are: 1st, that there is no evidence to support this finding; and 2nd, the finding is immaterial and impertinent in this case.

II. For that number 2 of the conclusions of law is erroneous, in that it does not charge the guardian, W. F. Askew, and the other defendants, as his sureties, with the $1,631.63 mentioned therein.

III. For that number 5 of the conclusions of law is erroneous, in that it does not charge the guardian, W. F. Askew, with eight per cent. during the whole time.

IV. For that No. 6 of the conclusions of law is erroneous, in that it fails to charge the defendants with the sum of $1,631.63, and compound interest thereon, from December 11th, 1869, said sum of $1,631.63 being left out of the calculation, and statement of account referred to in said section.

The defendant William F. Askew excepts to the report of the referee.

1. Because he does not find as a fact, that the sum of sixty-five hundred and twenty-six dollars and fifty-four cents, paid to the defendant William F. Askew by the Ætna Life Insurance Company, was received by said Askew, as the guardian of Minnie Moore and John C. Moore.

2. Because he finds as a fact, that on the 13th day of December, 1869, the plaintiff Annie E. Carr, paid to the defendant William F. Askew, as guardian of Minnie Moore, the sum of thirty-four hundred and seventy-three dollars and forty-six cents.

3. Because he finds as a fact, that the defendant William F. Askew, charged himself in his returns, as guardian of Minnie Moore, with the sums of money received by him, as aforesaid, from the Ætna Life Insurance Company and the said Annie E. Carr, amounting in all to ten thousand dollars.

4. Because the referee finds as a fact, that the plaintiff Annie E. Carr, intermarried with her co-plaintiff, Albert G. Carr, on or about the 13th day of December, 1875.

5. Because he finds as a fact, that the defendant William F. Askew, used and invested in his own business, the entire sum of money received by him as aforesaid, amounting to ten thousand dollars as aforesaid, from the time it first went into his hands, and never otherwise invested the same.

6. Because he finds as a fact, that from the 13th of December, 1869, to the present time, money could have been loaned in Wake county, upon safe personal security or real estate mortgage at eight per cent. interest per annum.

7. Because he finds as a fact, that from the 13th of December, 1869, to the present time, a continuous rate of interest of 7 per cent. per annum would have been the maximum that could have been realized.

8. Because he does not find as a fact, that all the money which went into the hands of the defendant William F. Askew, arose from the policy of insurance for ten thousand dollars, on the life of James A. Moore, issued by the Ætna Life Insurance Company of Hartford, Connecticut, and that the same was received by said Askew, under and by virtue of, and according to the terms of said policy.

9. Because he does not find as a fact, that from the 13th of December, 1869, to the present time, a continuous rate of 6 per cent. interest per annum, is all that could have been realized by the defendant Askew, on the fund in his hands as guardian.

10. Because he does not find as a fact, that from the 13th of December, 1869, to the date of the death of the plaintiff's intestate, a continuous rate of interest of 6 per cent. per annum, is all that could have been realized by said Askew upon the funds in his hands as guardian.

11. Because he does not find as a fact, that the defendant Askew paid taxes on the fund in his hands as guardian, from the time it was received by him to the present time, amounting in all to fifteen hundred dollars.

And the defendant William F. Askew demands that all issues of fact made by the exceptions of the plaintiffs or defendants to the report of the referee, shall be tried by a jury.

These exceptions are either immaterial, or substantially embraced in those taken by the defendant Askew, except those taken to the refusal of the referee to allow the defendant Askew credit for commissions, and his refusal to allow a jury trial on the issues of fact made by the exceptions.

It was admitted by counsel that W. F. Askew was appointed guardian of Minnie Moore, and John C. Moore, minors, and children of James A. Moore, deceased, on the 30th of August, 1869, and entered into bond in the penal sum of twenty thousand dollars, with George W. Swepson and W. H. High as his sureties.

At the October Term, 1885, the cause coming on to be heard upon the report of the referee and exceptions thereto, the Court adjudged that the counter-claim set up by the defendants, did not contain facts sufficient to constitute a cause of action, and for that the counter-claim set up being against the relator of the plaintiff Annie E. Carr, personally, could not be maintained, and it was therefore dismissed.

That the defendant W. F. Askew was not entitled to, and that he be not allowed, a jury trial, upon the issues of fact raised by the exceptions either of plaintiffs or defendants to the report of the referee.

That plaintiffs' first and third exceptions to the report of the referee be sustained, and that the following, "but taking into consideration the intervals occurring between the taking and re-lending of loans, a continuous rate of seven *per cent. per annum* would have been the maximum that could have been realized," in the latter portion of section 17 of the referee's report, be and the same is hereby stricken out, the said finding being contrary to the evidence.

That all the other exceptions, as well those by plaintiffs as defendants, to the report of the referee, be overruled, and all the

findings of fact and conclusions of law, except as hereinbefore modified by sustaining the first and third exceptions of the plaintiffs, be sustained and confirmed, and the case was recommitted to the referee to report the amount due from the defendant W. F. Askew, guardian of Minnie Moore, upon a calculation in accordance with this order.

The referee, at October Term, 1885, reported that the plaintiffs were entitled to recover the sum of eleven thousand three hundred and fifty-four dollars and twenty-nine cents, with interest at eight *per cent.* on nine thousand dollars and twenty cents, from the 31st day of August, 1885, until paid, and costs of action.

Judgment was therefore rendered by the Court against the defendant W. F. Askew and the above named sureties, for the sum of twenty thousand dollars, to be discharged upon the payment to the plaintiff, as administratrix of Minnie Moore, the sum so last reported by the referee to be due.

And it was further ordered and adjudged, that nothing in this judgment or the order heretofore made, should be held to prejudice the rights of the personal representative of John C. Moore, deceased, on account of the $1,631.63 and interest, mentioned in the second and fourth exceptions of plaintiffs.

The plaintiffs excepted to so much of the judgment rendered upon the original report of the referee at August term, 1885, for that said judgment overrules the plaintiffs' exceptions second and fourth to said report, and does not charge the defendants with the $1,631.63 and interest, in said exceptions mentioned.

And the defendants excepted to said judgment, because the Court dismissed the counter-claim of W. F. Askew; because it decided that the said W. F. Askew is not entitled to a jury trial upon the issues of fact raised by the exceptions to the report of the referee; because it decided that the first and third exceptions of the plaintiff be sustained; and that the following, "but taking into consideration the interval occurring between the taking in and re-lending of loans, a continuous rate of seven per cent. per annum would have been the maximum that could have been realized,"

in the latter portion of section 17 of the referee's report, be stricken out, the said finding being contrary to the evidence; because he decided that all the other exceptions to the report of the referee should be overruled; and because he sustains all the findings of facts and conclusions of law of the referee, to which the plaintiffs excepted.

From this judgment, both parties appealed.

*Messrs. Samuel F. Mordecai, R. H. Battle, John W. Graham* and *W. W. Fuller* (*Mr. Thomas Ruffin* was with them on the brief), for the plaintiffs.

*Messrs. Spier Whitaker* and *Thomas M. Argo,* for the defendants.

ASHE, J. (after stating the facts). This is the plaintiffs' appeal, but we find the exceptions of the plaintiffs and defendants so bearing upon each other, that we have deemed it most conducive to an understanding of the points raised and insisted on by either side, to consider on this appeal all the exceptions taken by either party.

The following facts were either not controverted, or were established by ample proof, taken before the referee: That James A. Moore, the first husband of the plaintiff Annie E. Carr, died on the ... day of July, 1869, leaving two children, Minnie Moore and John C. Moore, minors of tender age. That the defendant W. F. Askew was appointed guardian of the said Minnie and John, on the 30th day of August, 1869; that said John C. Moore died in September, 1869, leaving as his only next-of-kin, his mother, the plaintiff, and his sister, the said Minnie; that the said James A. Moore, at the time of his death, had a policy of insurance on his life, for ten thousand dollars in the Ætna Life Insurance Company, "for the benefit of his wife, Annie E. Moore, so long as she remained in widowhood, and children;" that W. F. Askew, as guardian, received from the insurance company on the 11th December, 1869, $6,526.54,

in full of all claims due by the company upon the life policy of James A. Moore, and that on the same day, the plaintiff Annie E. Moore (now Carr), received from the company $3,263.27, in full of all claims on the said policy due to her as widow of the said James A. Moore, and that she paid over the sum so received by her from the insurance company, and added thereto out of her individual funds, $210.00, to make the sum of $10,000.00 with which Askew, as guardian, charged himself, as received December 13th, 1869, in his return of December 13th, 1870, and that he continued to make returns upon that basis, until 1882, when he ceased to be guardian by the death of his ward; that he used this money of his ward in his own business without making any investment of the same.

The plaintiff's ground of exception is, that the Court overruled his 2nd and 4th exceptions, and in this we think there was error. The $1,631.63, which is the subject of this exception, was found by the referee to be a portion of the fund received by the defendant from the insurance company, due to John C. Moore, who died before the fund was received by the defendant, when he was no longer guardian of the said John C. Moore. But the receipt given by the defendant to the company, was signed by him as "guardian," without stating of whom he was guardian, and as he was *then* guardian only of Minnie Moore, it must be intended he received it for her, especially as in his guardian return of 13th December, 1870, he charged himself with ten thousand dollars, as guardian of Minnie Moore, which was made up by the sum received by the defendant and plaintiff respectively, from the insurance company, and $210 added thereto by the plaintiff, to make up the $10,000. The defendant Askew is chargeable with this sum, because he received it for his ward, and charged himself with it as her guardian; for, it is held, when a guardian has received money by virtue of his office, and for his ward, he cannot exonerate himself from liability, by showing that the money was due to another, *Humble* v. *Mebane*, 89 N. C., 410, which was followed and approved in *Sain* v.

*Baily*, 90 N. C., 566, and *Burke* v. *Turner, Ibid.*, 588—and in this latter case it was held, that the sureties were also liable, and if he was chargeable with the money so received, it follows that he was also chargeable with compound interest thereon, until the death of his ward, which occurred in the year 1882. This disposes of the exceptions of the plaintiff, and we now proceed to consider those of the defendant.

The first exception cannot be sustained, because it was in evidence that John C. Moore died before any money was received from the Ætna Life Insurance Company.

His second exception cannot be sustained because it was expressly proved by the testimony of the plaintiff Annie E. Carr, that she paid to W. F. Askew as guardian of Minnie Moore, the sum of $3,473.46, the amount received by her from the insurance company, and the defendant Askew charged himself with it.

His third exception is met by the sworn returns of the defendant Askew, as guardian of Minnie Moore, to the Probate Court of Wake county, and by the testimony of the plaintiff.

His fourth exception is frivolous, for it is immaterial in the investigation of this case, whether the plaintiff was married to Albert G. Carr on the 13th day of December, or some other day, but if material, it was so alleged in the complaint and not denied.

His fifth exception is met by his own statement accompanying his return as guardian, to the Probate Court of Wake, on the 13th day of December, 1882, and verified by his oath.

His sixth, seventh, eighth, and tenth exceptions appertain to the allowance of seven per cent. interest on the amount received by the defendant as guardian. These exceptions, we think, cannot be sustained, for the reason that the defendant Askew, in his returns, had charged himself with eight per cent. from 1869, until the marriage of the plaintiff in 1875, and then with seven per cent. until the death of his ward in 1883, and after that with six per cent.; and for the further reason, that the evidence

taken by the referee upon that matter, varies from six to eight per cent., and we think it was reasonable and just, under the proofs, that the intermediate sum of seven per cent. should be adopted as the average and maximum of interest with which the defendant should be charged, compounded until the death of his ward in 1883, and with simple interest after that time. As a general rule, when a trustee has not only neglected to invest the fund, but has applied it to his own purposes, as by using it in his trade, he may be charged with interest at the highest rate. Adams' Equity, 664. But in this case, the defendant had annually made a fair return for thirteen years, and had for a good portion of that time, charged himself with eight per cent. interest; that is a circumstance which might very properly have been taken into consideration by the referee, in exonerating him from being charged with the highest rate of interest.

His eighth exception is without merit. It is altogether unimportant whether the defendant received the $10,000 " under and by virtue of, and according to the terms of said policy," or not. It is sufficient to charge him with that amount, whether he received it all, directly from the insurance company, or a part of it, by donation to his ward, from the plaintiff. It suffices that he received that amount, and charged himself with it in his returns.

His eleventh exception in regard to taxes, cannot be sustained, for we must take it that the defendant paid no taxes on the fund in his hands, as taxes due upon the estate of his ward, or that he paid any taxes whatever on the fund, as he did not charge his ward with the taxes in his returns; for it is fair to presume, if he had paid them, he would have so charged them, as he seems to have been very particular and minute in his returns, in charging her with all the items of his disbursements.

The defendant further excepted to the referee's conclusions of law; all of which have been heretofore disposed of, in our decisions upon the exceptions above considered, except the second exception in the series, which is to the conclusion of the referee,

14

that the defendant Askew "is not entitled to any commissions upon his receipts and disbursements."

We think this exception should be sustained. It was held by this Court in the case of *Burke* v. *Turner,* 85 N. C., 504, "that a·guardian is not entitled to commissions on money collected and used by him in his own business," but that was a case where the guardian not only used the money in his own business, but was guilty of gross negligence in not making his returns, &c. In this case, although the guardian used the money of his ward for his own purposes, he made his annual returns with strict punctuality and fairness for thirteen years, so that it might be seen at all times, for what sum he was liable to his wards, and he and his sureties were perfectly responsible. Although he violated the law, and abused the trust reposed in him, by the use of his ward's money, we do not think it was such gross malfeasance as should exclude him from the right to be allowed commissions. As the sum he received was large, and he had no litigation, and very little trouble, except in paying out small sums for the maintenance and education of his ward, we think he should have been allowed $2\frac{1}{2}$ *per cent.* on the receipt of the $10,000; and five *per cent.* on his annual disbursements. This accords with the rule laid down by the Court in the case of *Graves* v. *Graves,* 5 Jones Eq., 280.

Both parties excepted to the judgment of the Court. The plaintiff's exception was to the overruling of his exceptions to the report of the referee, Nos. 2 and 4, and these have already been disposed of by holding there was error in not allowing these exceptions.

The defendant excepted to the judgment:

1. Because the Court decided that the defendant Askew was not entitled to a trial by jury upon the issues of fact raised by the report of the referee.

2. Because it decided that the counter-claim of the defendant Askew be dismissed.

3. Because it decided that the sentence "but taking into consideration the interval occurring between the taking in, and re-

lending of loans, a continual rate of 7 *per cent. per annum*, would have been the maximum that could have been realized," in the latter portion of referee's report, be stricken out.

4. "Because it decided that all the other exceptions by the plaintiff to the report of the referee should be overruled, and because he sustained all the findings of facts, and conclusions of law of the referee to which the plaintiff excepted." The ground of the first exception taken by the defendant to the judgment of the Superior Court, presents the very serious and important question, whether upon a compulsory reference, the parties have a right to have all the issues of fact raised by exceptions to the report of the referee, tried by a jury. Though it may not be considered entirely as an open question, it is at least a question involved in so much doubt, as to require a definite solution.

Among the first cases in which the sections of The Code giving to the Courts the right to refer cases to referees, was *Klutz* v. *McKenzie*, 65 N. C., 102, and there Chief Justice Pearson, speaking for the court, said, " the parties to a case referred, were not entitled to have the issues raised by exceptions taken by them before the referee, tried by a jury." This view is strongly maintained by Rodman, Judge, in his dissenting opinion in *Armfield* v. *Brown*, 70 N. C., 32; and the Court in *Overby* v. *Fayetteville B. & L. Ass'n*, 81 N. C., 56, and *Grant* v. *Reese*, 82 N. C., 72, very clearly intimates an inclination to support the decision in *Klutz* v. *McKenzie,* since the amendment to the Constitution of 1875, Art. 4, §8. In *Green* v. *Castleberry*, 70 N. C., 20, and *Armfield* v. *Brown, Ibid.*, 32, it was held that the parties had the right to have all such issues tried by a jury, but the opinion on that point in both of these cases, was an *obiter dictum*. The Constitution, Art. 4, §13, declares, "In all issues of fact joined in any Court, the parties may waive the right to have the same determined by a jury, in which case the finding of the Judge shall have the force and effect of a verdict by a jury." The contemporaneous construction of this section of the Constitution, may be gathered from the Acts of the Legislature

upon the subject, passed some time after the adoption of the Constitution.

In C. C. P., §221, The Code, §393, the Legislature has defined what is an issue of fact, to-wit, " an issue upon a material allegation in the complaint, controverted by the answer; or an issue upon new matter in the answer, controverted by the reply, or an issue upon new matter in the reply, except an issue of law is joined therein." It will be seen from this, that the Legislature of 1868, many of the members of which had been members of the Convention which adopted the Constitution in the same year, considered issues of fact, to be such issues as were raised by the pleadings. By C. C. P., §224, and The Code, §398, these issues of fact must be tried by a jury, unless a trial by jury be waived, or a reference be ordered.

By §244, C. C. P., The Code, §420, " all or any of the *issues in the action*, whether of fact or law, may be referred upon the written consent of the parties," &c. This is a trial by a referee, and as it is by consent, it has been held the parties waive a jury trial of all the *issues in the action;* that necessarily means all *issues raised by the pleadings.*

By §245, C. C. P., The Code, §421, provision is made for a compulsory reference in certain cases there enumerated, but it is expressly provided that the compulsory reference under this section, " shall not deprive either party of his right to a trial of *the issues of fact arising on the pleadings."* The exception to this, is when questions of fact arise upon motion, &c., but we do not think this applies to facts arising on exceptions to a referee's report. If the reference is by consent, the parties waive their right to a trial by jury, and the referee is compelled to decide the whole case upon the law and facts raised by the pleadings; but if it is compulsory, the parties waive nothing, and are still entitled to a trial by jury, as if no reference had been made, and when there is no reference, the trial by the jury, of course, is confined to such issues as are raised by the pleadings.

We are of opinion such was the intention of the framers of the Constitution of 1868.

To put a different construction upon the section of the Constitution referred to, would open a wide door to prolixity and delay in legal proceeding, attended with confusion and triflingly vexatious controversies, which it was the policy of the new system of procedure to avoid, and whatever objection may have been entertained to such interpretation of the Constitution of 1868, it is removed, we think, as was intimated in the case of *Overby* v. *Fayetteville B. & L. Association*, 81 N. C., 56, by the amendment to the Constitution of 1875, Art. 4, §8.   Our conclusion is, there was no error in the refusal of the Court below to allow the defendant to have the issues raised by his exceptions tried by a jury.

The next exception taken by the defendant, was to the dismission by the Court of the defendant's counter demand against the plaintiff, for an alleged indebtedness to him.   Strictly, as a counter-claim, it cannot be set up against the plaintiff, because she is suing in this action in *autre droit*, and it has been held that a counter-claim for an individual debt, cannot in such a case be maintained.   *Currie* v. *McNeill*, 83 N. C., 176; *Holliday* v. *McMillan*, 79 N. C., 315, same case 83 N. C., 270.

But here it is alleged by the defendant, that the plaintiff is indebted to him in a large sum for money loaned her, and that she is insolvent, and has no other means, wherewith to pay this indebtedness, except out of her share of the money which she seeks to recover from the defendant in this action, as administratrix of Minnie Moore.   The plaintiff denies the debt, and also her insolvency, and pleads that if she is indebted to the defendant, the debt is barred by the statute of limitations.

These are issues of fact raised by the pleadings, and should have been submitted to the jury, not upon the ground of a counter-claim or equitable set-off, but a *retainer in the nature* of a set-off, which is founded upon the equitable principle, that it would be unjust and against conscience to allow the plaintiff, if insolvent, to receive a large sum of money from the defendant, in a portion of which she was interested, without having that inter-

est, whatever it may be, subjected to the claim of the defendant, if established. Adams Eq., 508; *Pegram* v. *Armstrong*, 82 N. C., 326.

This exception, we think, was well taken, and should have been sustained, and the defendant is entitled to have these issues tried by a jury, and if found in his favor, should have the amount so found, deducted from the amount of the plaintiff's interest in the recovery from the defendant.

Our opinion is there were errors in the particulars herein indicated; and that the case be remanded to the Superior Court of Wake county, to the end that the following issues be submitted to a jury:

1. Is the plaintiff indebted to the defendant in the sum of $2,854.90, or any part thereof?

2. Is the same or any part thereof barred by the statute of limitations—and if only a part, what part?

3. Has the plaintiff any other means of paying her indebtedness to the defendant Askew, besides her interest in the recovery in this action?

And further, that after the verdict of the jury, the case be recommitted, that an account be taken of the indebtedness of the defendant to the plaintiff as administratrix of Minnie Moore, in accordance with the modification of the judgment of the Superior Court made in this opinion, and the further account of the interest of the plaintiff Annie E. Carr in the sum due by the defendant. Should the above issues be found in favor of the defendant, then such sum so found to be due from her, may be deducted from the amount of defendant's liability.

The Clerk of this Court will ascertain the aggregate amount of costs in both appeals, and there must be a judgment against the plaintiff and her sureties on the appeal for one-half of said costs.

Error.                                                    Remanded.

DEFENDANT'S APPEAL.

This was the defendant's appeal, in the foregoing case, and the facts are the same.

ASHE, J. In this action, it was agreed that the summons, complaint, answer and other pleadings, the order of reference, the report of the referee including the evidence, the defendant's exceptions thereto, the judgments and defendant's exceptions thereto, shall constitute the defendant's case on appeal for Supreme Court.

And inasmuch as in that appeal we have deemed it advisable and proper to consider and adjudicate upon the exceptions of the defendant, as well as those of the plaintiffs, our determination upon the exceptions of the defendant in that case, must be taken and considered as our adjudications upon those exceptions on this appeal, and the same disposition made of them.

The case is remanded on the same ground and for as like purpose as in that case.

The Clerk of this Court will ascertain the aggregate amount of costs in both appeals, and there must be judgment against the defendant, and his sureties for the appeal, for one half of said costs so ascertained.

Modified and remanded.

Remanded.